**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| WILLIAM DRIVER | * |
|     Plaintiff | * |
| v | *    Civil Action No. WMN-06-1904 |
| BUREAU OF PRISONS, et al., | * |
|     Defendants | * |
| | ****** |

**<u>MEMORANDUM</u>**

This is a civil rights case filed by Plaintiff, a federal inmate, asserting a a *Bivens*[1] claim for deliberate indifference to a serious medical need. Paper No. 1. Counsel for Defendants has filed a dispositive motion.[2] Paper No. 19. Plaintiff has filed a response to which Defendants have replied. Paper Nos. 21 and 23. No hearing is needed to resolve the question as to whether Plaintiff

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] Also pending are Plaintiff's "Motions for Preliminary Injunction." Paper Nos. 4, 5, and 6. For the reasons that follow, the court finds that Plaintiff is not entitled to a preliminary injunction and the Motions shall be denied.

    Additionally, Plaintiff has filed a Motion for Appointment of Counsel. Paper No. 3. The Court's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 779 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). The court finds from its review of the Complaint, numerous motions, and the opposition response that Plaintiff is able to adequately articulate the facts and grounds for relief in the instant matter without notable difficulty. Furthermore, the court concludes that the claim is not unduly complex. Therefore, the motion shall be denied.

    Plaintiff has also filed a Motion for Copy Work at the Government's Expense (Paper No. 11) wherein he seeks copies of the executed summonses filed in this case. Defendants were not served with the Complaint via summons; rather, the court entered an Order on August 7, 2006, directing them to respond to the Complaint. As there are no documents responsive to Plaintiff's Motion, it shall be denied.

    The Court is in receipt of Plaintiff's "Motion for Relief for Judgment or Order Allowing for an Extension of Time for Payment of Initial Partial Filing Fee." Paper No. 12. The court has received partial filing fees from Plaintiff. The Motion shall be denied.

    Plaintiff has also filed a "Motion for Relief from Judgment or Order in Opposition to Defendants Motion for Extension of Time." Paper No. 18. Defendants' Motion for Extension of Time was granted by the Court. Plaintiff's Motion shall be denied as moot.

is entitled to relief. *See* Local Rule 105.6 (D. Md. 2004).  For the reasons that follow, Defendants' Motion to Dismiss and/or for Summary Judgment, construed as a summary judgment motion, shall be granted.

## 1. Background

Plaintiff claims he arrived at FCI-Cumberland with a diagnosed psychiatric disorder that is complicated by medical conditions.  He states that Defendants improperly discontinued his prescribed psychotropic medication and failed to renew previously granted "bottom bunk" status. Paper No. 1.  Plaintiff states that when seen by Dr. Newman on February 2, 2005, Dr. Newman renewed Plaintiff's prescription for Elavil.  On February 11, 2005, in the pill line, Plaintiff learned that the Elavil prescribed by Dr. Newman was not available for him, rather, a lower dose of Elavil prescribed by physician Dr. Moubarek was given. *Id*.  Plaintiff later ascertained that Dr. Moubarek had canceled Dr. Newman's Orders. *Id.*

The uncontroverted records before the court demonstrate that Plaintiff arrived at FCI-Cumberland on December 6, 2004.  Paper No. 19, Ex. 1. On December 6, 2004, he was initially seen at the FCI Cumberland Chronic Care Clinic because he was newly transferred and had an existing prescription.  *Id*, Ex. 2.  At that time, Plaintiff advised medical personnel that he was prescribed Elavil, which helped him with his anxiety and sleeping but did little for his pain. *Id*.  Plaintiff was scheduled to be seen by psychiatric services. *Id*.

On December 16, 2004, Dr. Morshead , Chief Psychologist for FCI Cumberland, evaluated Plaintiff.  Dr. Morshead found that Plaintiff was not a candidate for ongoing psychological services, as his primary reason for taking Elavil was control of chronic pain.  Inmates who are taking medication for pain are monitored by the Health Services staff rather than psychiatry staff. *Id.*, Ex.

2

3.

On February 2, 2005, Plaintiff was seen in the Psychiatric Chronic Care clinic via a tele-conference conducted by Chief Psychiatrist Dr. Ralph Newman. *Id*. and Paper No. 1. Plaintiff reported to Dr. Newman that he took Elavil for chronic back pain. *Id*. Dr. Newman discontinued Plaintiff from participation in the Psychiatric Chronic Care clinic, finding no clinical indication for psychiatric treatment because the Elavil had been prescribed for back pain. While Dr. Newman temporarily continued Plaintiff's previously prescribed Elavil, he noted that the prescription would be continue thereafter if deemed necessary by the FCI-Cumberland medical department. At the same time, Dr. Newman recommended Prozac as treatment for Plaintiff's complaints. Plaintiff refused this treatment recommendation. Paper No. 19, Ex. 4.

After his removal form the Psychiatric Chronic Care clinic, Plaintiff's medical care and treatment became the primary responsibility of the FCI Cumberland medical staff. Paper No. 19, Ex. 2-4. On February 10, 2005, Dr. Moubarek, Clinical Director at FCI Cumberland, reviewed Plaintiff's medical records and determined that Plaintiff's Elavil dosage was too high, instead finding that a 50 mg daily dose for thirty days was a more appropriate level, with the goal of eventually eliminating the prescription. *Id*., Ex. 2.

Plaintiff was seen by medical staff at FCI Cumberland on March 7, 2005. He reported that Elavil helped with pain management and that he experienced insomnia when the dosage was decreased. There were no abnormal neurological findings and Plaintiff demonstrated a full range of motion in his back. Medical personnel determined that Plaintiff suffered from chronic low back pain with a history of laminectomy surgery. Elavil was further decreased to 25 mg for 7 days, then discontinued. *Id*., Ex. 2. Plaintiff was advised that the Bureau does not treat chronic pain with Elavil.

He was advised to take over- the-counter analgesics for his pain. Plaintiff was next seen on June 9, 2005. He again requested to be placed on Elavil and was again advised by medical personnel that the Elavil prescription had been discontinued. *Id*. Ex. 2.

Elavil had previously been maintained on the Bureau's National Drug Formulary for use with some psychological disorders as well as some symptoms of chronic pain, but its use has been in decline. *Id.*, Ex. 2 and 3. It was removed from the Bureau of Prison's National Drug Formulary. *Id.,* Ex. 2 and 3. It is considered by many in the psychiatric community to be an outdated drug based on its risk/benefit profile, as it can be fatal if overdosed and has been abused in the prison population due its sedative and anticholinergic properties. *Id.*, Ex. 4. Dr. Morshead reports that no inmates in the Mid-Atlantic Region would be prescribed Elavil for the symptoms Plaintiff manifests. She further states that there are other medications more effective in addressing pain. *Id*., Ex. 3.

Dr. Morshead as Chief Psychologist for FCI Cumberland screens patients to determine who needs to be seen in the Psychiatric Chronic Care clinic. Dr. Morshead believes that Plaintiff seeks medications with a sedative effect and requests particular medicines rather than treatment for particular symptoms. *Id.*, Ex. 3. Both Dr. Morshead and Dr. Newman discussed with Plaintiff the option of switching to other medications, but he declined. *Id*., Ex. 3 and 4. Although Plaintiff had been diagnosed with chronic pain syndrome in the past, that diagnosis was not current as of February 2, 2005, and was not made by any staff at FCI-Cumberland, Paper No. 19, Ex 3.. Dr. Moubarek opines that sometimes this diagnosis is given to patients with unidentified pain symptoms and is not necessarily a diagnosis of a psychiatric disorder. *Id*., Ex. 2.

According to Plaintiff, he was issued bottom-bunk status while housed at the United States Penitentiary -Leavenworth from September 23, 2004, until April 24, 2005,  due to his spinal

stenosis. Paper No. 1. Plaintiff requested bottom bunk status upon his transfer to FCI-Cumberland. The request was denied. Paper No. 1. Plaintiff was examined on January 4, 2005, by medical personnel who determined that there was no clinical indication for Plaintiff to be assigned a lower bunk. He was, however, issued a "no lifting over 20 pounds" and a "no job with repetitive bending" permit. Paper No. 19, Ex. 2. It is Dr. Moubarek's practice to reserve "bottom bunk only" restrictions for inmates with specific medical needs and diagnoses, such as those with a history of seizures and inmates with missing limbs. Additionally an inmate who has back surgery may require a "bottom bunk only" restriction for a limited period of time, as determined on a case-by-case basis. *Id.*, Ex. 2. Dr. Moubarek's professional opinion was that Plaintiff no longer required a bottom bunk restriction. *Id.*

## 2. Standard of review

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor. *See Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997) (citing *Anderson,* 477 U.S. at 255). The non-moving party may not rest upon mere allegations or denials in his pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir. 1991). The "mere existence of a scintilla of evidence in support of...plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252.

3. **Analysis**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). To state an Eighth Amendment claim for denial of medical care, Plaintiff must demonstrate that the actions of Defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S.

at 844.  If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F. 3d 383 (4th Cir. 2001), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

　　　The records before the court demonstrate that Defendants have not acted with indifference to Plaintiff's medical needs.  Rather, Plaintiff simply disagrees with the medical and professional judgment of his treating physician, treating psychiatrist and the Clinical Directors of Psychiatry and Medicine at FCI-Cumberland.  There is no dispute that Plaintiff has been diagnosed with somatic pain disorder in the past and had been prescribed Elavil.  There is also no dispute that Plaintiff's current medical providers believe that he does not need continued psychiatric care at this time and the Elavil is wholly inappropriate to treat his purely medical condition.  Likewise, there is no current medical finding that Plaintiff requires bottom bunk status. That he had previously been granted bottom bunk status does not demonstrate that he currently requires bottom bunk status or that the failure to grant same demonstrates an indifference for his medical need.

　　　Plaintiff merely disagrees with the course of treatment he received for his complaints. Specifically, he believes his prescriptions for Elavil and bottom bunk status were in perpetuity and not subject to review by any other medical providers.  This position is simply not supported by medical evidence.  Such disagreements with a course of treatment  do not provide the framework for a federal civil rights complaint but rather, at most, state a claim for negligence. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975).  The court simply cannot find from the uncontroverted

7

medical records before it that the medical care received by Plaintiff was so egregious as to constitute an Eighth Amendment violation.

### 4. Conclusion

For all the foregoing reasons, Defendants' motions for summary judgment shall be granted. A separate Order follows.

      /s/
__2/28/07__        _____
Date        William M. Nickerson
      United States District Judge